**Philip A. Seplow, Esq.**
**Attorney AZ #004859**
**8808 North Central Ave. #278**
**Phoenix, AZ 85020**
**Tel: (602) 254-8817**
**PhilipSeplowLaw@gmail.com**
**barkerpas@gmail.com**
**Arnold Jesse Cervantes**

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America,** **Plaintiff**,   )<br>)<br>)<br>)<br>vs.   )<br>)<br>)<br>**Arnold Jesse Cervantes**   )<br>) | Case  CR-22-00259-DLR<br><br>SENTENCING  MEMORANDUM |

COMES NOW THE Defendant, Arnold Jesse Cervantes, by and through undersigned counsel, and respectfully presents his Sentencing Memorandum to this Honorable Court.

RESPECTFULLY SUBMITTED THIS 14th day of January, 2024,  by

s/ Philip A. Seplow<br>Attorney for Defendant<br>Arnold Jesse Cervantes

**MEMORANDUM**

This Memorandum is different than the typical sentencing memorandum submitted to a District Court Judge in a criminal case, not only because it seeks a tremendously different disposition than that sentence recommended in the Presentence Investigation Report (*PSR* Document 167) as authored by U. S. Probation Officer, Kristin M. Baily, but because one particular argument follows an important train of thought, to wit: a "what's good for the goose is good for the gander" analysis *infra*, when it comes to the Government versus the individual, in this case, Arnold Cervantes.

To be more clear, the *PSR* recommends a 24 month sentence in Bureau of Prisons.    The Sentencing Guidelines

for this case have run amuck as multiple upward adjustments have been added to the base level offense (see, page 9 of the *PSR* paragraphs 27, 28, 29 and 31) where a base level offense of 12 crushingly morphs into an adjusted offense level of 28.   The Defense is asking this Honorable Court to suspend the imposition of sentence and place Arnold Jesse Cervantes on two years' probation. In good faith, the Defense believes that the interests of justice are more than satisfied by said term of probation.

## HOW DID THIS CASE BEGIN?

A long, long time ago, as far back as December of 2016, when Arnold Cervantes was still an immature male (he was born on January 9, 1993) who at the time, like other young men, had a temporary fascination with guns, decided that he wanted to celebrate New Years Eve in Mexico where he was living at the time, in the same

manner that other people living in Mexico celebrated New Years.

It should be noted that Arnold is a United States citizen as he was born in Yuma, Arizona. He wanted to purchase two small caliber guns (Colt 1911 caliber .22). The purpose was to join in the cultural celebration that takes place within the boundaries of our neighbor to the South, Mexico, on December 31, when people fire guns (in Arnold's case, the guns are pointed into the dirt). Even though Mr. Cervantes was a United States citizen, had no criminal arrests (not even a traffic ticket), and was not a drug user (which are some of the major requirements of the Alcohol Tobacco and Firearms form 4473 needed to purchase a firearm in the United States), Arnold did not have a residential address in America, although he did have a P.O. box in San Luis, Arizona, to receive his mail.

He worked seasonally in States such as Minnesota, North Dakota and Wisconsin, as a heavy equipment operator involved in the construction of solar farms. (a picture of a solar farm is included in the separate exhibit packet that will be hand-delivered to the Court, the prosecution and the probation department on January 16th as January 15th is a national holiday).

Another requirement of *ATF* form 4473 is having a United States residential address.   When Arnold was not working in the Midwest building solar farms, he would return to Mexico to live and would also, on the weekends, spend time in Lake Havasu as he was training (taking courses) in the field of computer/car care for fuel injected (*EFI TUNING SCHOOL*) engines.   But, since he did not have the required Arizona residential address, and could not purchase the two .22 caliber handguns, he ultimately had a

friend buy the two .22 caliber guns for him, and he did take them to Mexico.    This longtime boyhood friend was co-defendant  *C.V.-A.*

That was the mistake that sadly snowballed into the situation that existed during the first few months of the year 2017, where Arnold became involved with other illegal firearm  purchases.

After the New Years's celebration, Arnold had a friend, *C.U.-O.* who resided in Mexico, who also happens to be a co-defendant in this case but is "in the wind," presumably hiding in Mexico, something that Arnold never even thought about doing and would not do. The proof in that pudding is that this Court has allowed Arnold to visit his wife several times in Mexico during the pendency of this case, and Arnold has always promptly returned to the District of Arizona.

## HOW THE INVOLVEMENT INCREASED

*C.U.-O* told Arnold that his wife's family was having major security troubles (in Mexico) and he needed guns. He knew that Arnold had someone acquire the two .22 caliber guns for Arnold in the States, that someone being *C.V.-A.*

Arnold still has a vivid memory of how this occurred, as the emotional shock exhibited by *C.U.-O.* became imbedded in his mind.    Arnold was at *C.U.-O's* residence, sitting on a couch in San Luis, Mexico. *C.U.-O.* received a call and went outside to talk.    When *C.U.-O.* came back into the house he was in obvious shock.    His eyes were wide with worry. He told Arnold that *C.U.-O.'s* wife's family was kidnapped and that to get the family back, he needed to exchange guns for their release. As Arnold sits here today, in 2024, a few days after his 31st birthday, he

realizes that *C.U.-O's* story is and was rubbish, but at the time, in early 2017, he believed his friend and began to help.    *C.U.-O.* would instruct Arnold as to what firearms he needed and Arnold would relay that information to co-defendant *C.V.-A.*

Arnold contacted *C.V.-A* in the United States, and the illegal gun purchasing began. It lasted for no more than four months, and Arnold's involvement was even less than that (maybe 3 ½ months).    Admittedly, the enterprise was seductive and for that short period of time, Arnold participated in the purchases, and during those few months, probably felt like a big shot as he dealt with his friends. Again, *C.U.-O* would tell Arnold what he needed and Arnold would tell *C.V.-A* what was needed.    Then the guns would be purchased.

There are two other co-defendants, to wit: *J.L.* and

*G.F.-G.*    Arnold never had any contact with *J.L.* and doesn't remember any in person interaction with *G.F.-G.*

Another reason why Arnold's memory is not as complete as it should be, beyond the fact that this activity occurred seven years ago, is because on June 10, 2018, Arnold was involved in a near death vehicular collision.    In Somerton, Arizona (County Road 19), Arnold was standing at the back of a pickup truck with its tailgate open when another truck rammed into Arnold and the other truck. Arnold literally became squished (almost cut in half) between the two trucks.    As Arnold describes it, the two trucks made a sandwich out of him.    More, *infra*.    But for the purpose of this section, it should be known that Arnold was in a coma for a month (perhaps a little more), and certain things are not as crystal clear as he would want them to be. The activities for which he has pled

guilty were a part of his normal and casual relationship with friends, and for that reason not very memorable.

For instance, after he was arrested and the case entered litigation, Arnold was shocked when he saw some of the words of purchase that were bandied about with *C.V.-A* and himself during the spring of 2017 (this materializing from *ATF* reports). Also, the fact that he was arrested on June 27, 2022, almost five and a half years after his brief involvement, would cloud anyone's memory. Add to this, for at least four and a half months after June 10, 2018 (the day of the near-death ramming) Arnold was in the hospital and continued to return frequently to the hospital for treatment of his deep wounds and at least two surgeries plus continual therapy.  His injuries were so severe that he had to learn how to walk again which involved negotiating his "foot-drop." The next series of

exhibits in the soon-to-be hand-delivered packet will show how Mr. Cervantes looked (and to some extent, still looks), as a result of the near-death experience.

### SOME CRUCIAL 18 *USC* Sec. 3553 FACTORS

A crucial sentencing factor under 18 *USC* Sec. 3553 (a) (1), when the Court is seeking to impose a sentence that is sufficient but not greater than necessary to comply with the statute, is "the nature and the circumstances of the offense and the history and characteristics of the defendant."   Arnold Cervantes was a model citizen up until the time he had the two Colt 1911 guns purchased for him.   He veered off course for three and a half months in the early winter of 2017.

The offense was indeed serious, but the inflated story of how the guns were being purchased for someone named Ponchio is pure fantasy, at least as far as Mr.

Cervantes knows. Although 12 firearms were purchased, and because Arnold was part of the conspiracy charged, under the law, he is saddled with those purchases, However, the purchases made by *G.F.-G.* and *J.L.* from February, March and April of 2017 are totally foreign to Mr. Cervantes's memory. (*See*, page 7 of the *PSR,* paragraph #15).

Sending Arnold Cervantes to the Bureau of Prisons (*BOP*) at this late date, after he has performed a yeoman's job of rehabilitation and suffered horrific physical loss and pain for more than two years (either through Divine Intervention or just horrific luck) should be measured by this Court when considering appropriate punishment. In the packet are photos of Arnold's still open wounds.   This should give the Court pause when considering whether to send Arnold to an understaffed prison where those wounds

will constantly be in danger of becoming infected or be further damaged by physical interruption.

Another important consideration under 18 USC 3553 is to afford adequate deterrence to criminal conduct. It is more than obvious that Arnold will never engage in this conduct again. The conduct stopped in early 2017 and never repeated.

The Defense also realizes that the Court must consider deterrence to the community at large. In other words, criminals cannot simply get a slap on the hand for breaking the law, or else crime would be rampant. But each case is an individual case, and with all that Arnold Cervantes has gone through, he certainly has not received a slap on the hand.

The public is protected. All one has to do is read Brian Oliver's letter, *infra*, and follow the inspirational path that Arnold has taken after the original event, also *infra*.

The defendant has been educating himself for the past few years by learning the trade of an electrician, and he has been climbing the appropriate ladder to continue to make something of himself in that endeavor as he is currently a member of *Local IBEW 640*, *infra*. He has learned more and is continually absorbing more knowledge than he could ever receive from the *BOP*.

Earlier in this Memorandum, the term "what is good for the goose is good for the gander" was employed. The import is as follows: There are so many restrictions and rules placed upon a person facing the criminal justice system which must be followed to avoid further recriminations.    But what about the entity that is

prosecuting those people - people who are citizens of this country and who are at their core, basic human beings? In the case before the bench, why does someone have to be arrested years later for something the Alcohol Tobacco and Firearms knew about at its inception. *See*, paragraph #6 on page 4 where it states. "In April 2017, a Bureau of Alcohol, Tobacco, Firearms and Explosives (*ATF*) analyst observed a sale summary indicating *C.V.-A.* purchased multiple firearms . . ."

Just as the Court is concerned about the public view of the way deterrence is fostered, shouldn't the Court also be concerned with the way the public views the manner in which crime prevention is efficiently administered by the prosecutorial agencies. Perhaps the most efficient way to make that point is to **not** punish the person who has changed his or her ways and for years has been

- 15 -

contributing to their own growth as well as their community's. (emphasis added).

## WHAT HAS ARNOLD CERVANTES BEEN DOING DURING THE YEARS THAT HAVE PASSED AND WHAT WILL HE BE DOING IN THE FUTURE?

Arnold is now a member of Local *IBEW* 640. He has paid Union Dues for more than a year. He started as a *CW3* where he worked as an aide to a journeyman wireman. He would help in the construction of the underground wiring and piping. Photos of this kind of work will be part of the aforementioned hand-delivered packet as will some of Arnold's employment credentials.

Arnold soon advanced to *CW4* (higher level electrical worker) where he continued in his progress. In a few months, Arnold will be a *CE1* and hopefully soon thereafter, will be a journeyman wireman. He has actually

performed work that a journeyman wireman does, of course under stringent supervision. He currently works for *Rosendin*, and when he reaches 8,000 hours of approved work (he works 60 hours a week) he will be able to take the journeyman wireman test. Currently, Arnold has accumulated. approximately 6,500 hundred hours.  A good percentage of those hours are grandfathered in from his experience building solar farms.   His employer, *Rosendin,* is scheduled to do a full count next week, as Arnold has become eligible for another level raise.   As an aside, Arnold is a certified Scissor Lift Operator (through OSHA and REI and granted that certification on 8/21/23) and a boom-lift and forklift operator as well.   He also plans to go to school to become a safety coordinator.

The aforementioned packet contains a letter from Brian Oliver, the General Foreman of *Rosendin Electric.* He has

only superlative things to say about the person who is now facing sentencing for acts that occurred 7 years ago.    Mr. Oliver states that Arnold is a valuable member of his team.    "Arnold has dramatically increased his knowledge and impressed me with his outgoing personality and his ability to work harder than most.    I hold Arnold to a higher standard than I do for other members of my team, only because I see his potential to climb the 'supervision ladder' if you will."

As this Court knows, Arnold has a significant other in Mexico who he considers his wife and to plans to marry.    Unfortunately, Alexa Gastelum recently suffered a miscarriage where she was carrying triplets.    The Court and the prosecution were kind enough to allow Arnold to travel to Mexico once again to comfort his wife. This loss

was a severe emotional blow to all in the Gastelum and Cervantes families.

## THE ADDITIONAL ADDED LEVELS

Though formal Objections were not presented to this Court because the Defendant pled guilty to conspiracy, there are explanations for the Court to consider in regard to the four paragraphs (#'s 27, 28, 29 and 31) which add a total of 16 levels to the base level offense.   Whether this Court accepts all or some of these added levels, the Defendant still maintains that the interests of justice call for probation as the *USSG* calculations are one aspect to be considered by the Court in the sentencing calculus - but are not mandatory.

Regarding paragraph 27, which adds four levels, as explained, *supra*, the purchases made by *G.F.-G* and *J.L.* are foreign to Arnold's memory and if other people asked *G.F.-G.* and/or *J.L.* to purchase weapons, it was unknown to Arnold.   As an aside, the only reason that *C.U.-O* could talk about the fictional Ponchio, is because after Arnold had been interviewed by the *ATF*, he told *C.U.-O*

what he told the *ATF* about the made-up story. This is in regard to paragraph #14 on page 7 of the *PSR*.

When Arnold was interviewed by the *ATF*, he was scared, and he told them what he thought they wanted to hear even if it wasn't true because he wanted leave because he was about to fly to Bismarck, North Dakota, for work, and he did not have enough money to buy another ticket - in other words, no matter how stupid his making up a story was, it was his idea of expedience.

Regarding paragraph #28, there is no question that Mr. Cervantes was involved in the trafficking of firearms, but vehemently denies it was for the Sinaloa Cartel (he didn't even know anybody in the Sinaloa cartel) and the only reason was to aid his friend and his friend's' family, *C.U.-O.* who he thought were in peril.

Regarding paragraph #29, there is no question that the firearms would be going to *C.U.-O,* who would not be able to successfully fill out an *ATF* form 4473, himself. But that was the only person that Arnold thought the guns were going to.

In regard to paragraph #31, though Mr. Cervantes was the first person to initiate the transactions (the two Colt 1911 .22 caliber pistols), ultimately, it was *C.U.-O.* who directed the movement or weapons thereafter. Again, Arnold had no idea who *J.L.* was and disputes the words spoken by *G.F.-G.* during his law enforcement interview as he doesn't remember meeting *G.F.-G* at all, although it appears, from the discovery, as if *G.F.-G.* did call the Defendant multiple times. Regardless, Arnold certainly didn't direct 5 people in this 3 and ½ month caper.

**CONCLUSION**

Arnold has done all one could do under the circumstances in which he found himself. Instead of throwing his hands in the air and claiming that his life is over after almost being cut in two by two merging trucks and after being arrested years later for something stupidly done, not initially for any gain, but to have some celebratory fun on New Years, and after he and his wife suffered the miscarriage of three children, he is still working every day.  He is still leaning his craft every day. But one shouldn't simply say, "Well, he recovered twice before and he can recover again after he is released from prisonl." Everyone knows that is not so easy and it doesn't happen that successfully very often.   The further depression

that one suffers inside the *BOP* and the realization that everything that Arnold has worked for over the past years is now laid to waste, may even be too much of an obstacle for someone as seemingly resilient as Arnold Cervantes to overcome.

As his supervisor at Rosendin wrote in his letter to the Court: "I understand Arnold is facing this situation that is definitely life altering and I believe that given the chance to redeem himself Arnold will excel. Please show Arnold that there are second chances in life, you will not regret this decision."

RESPECTFULLY SUBMITTED, January 14, 2024.

s/ Philip A. Seplow
Attorney for Defendant
Arnold Jesse Cervantes

# CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Abbie Broughton Marsh
Assistant United States Attorney

The Defendant will be provided with a copy of the above.

s/ Philip Seplow